## WOMAN PASSENGER INJURED BY AN EXPLOSION DURING A STRIKE.

Circuit Court of Cuyahoga County.

ELLE SCHROEDER, BY HER GUARDIAN, CARL F. SCHROEDER, v. THE CLEVELAND ELECTRIC RAILWAY COMPANY.

Decided, March 15, 1904.

*Carrier of Passengers—Degree of Care Required to Protect Passengers Against Danger During a Strike.*

1. A carrier of passengers is not liable for the act of an intervening independent agency. But where there is a known impending danger from a source for which the carrier is not responsible, then the law imposes upon the carrier a degree of care in respect to such impending danger; but the degree of care in such case depends upon the conditions and circumstances of the particular instance, varying with those conditions, and is not that absolute degree of care which a carrier owes to its passengers under ordinary conditions.

2. The law requires of a carrier of passengers operating its cars while a strike is in progress and while known dangers exist, the highest degree of care practicable for the safety of its passengers in view of the existing and known conditions, consistent with the practical operation of and management of its cars.

3. Where passengers upon a street car are injured by the explosion of an explosive placed on the tracks by some miscreant, at a time when a strike of the employees of the street-railway company is in progress and after numerous other similar explosions had occurred, the company is not liable unless the conditions existing at the time were of such a nature that it had reason to expect damage to its cars and injury to its passengers from explosives, and therefore should have adopted extraordinary precautions to avoid such damages and injuries and failed so to do.

HALE, J.; WINCH, J., concurs; MARVIN, J., dissents.

Error to the court of common pleas.

The defendant is a corporation owning and operating a street railroad in the city of Cleveland.

On the 30th of August, 1899, the plaintiff, while a passenger upon the defendant's road, was most seriously injured by an ex-

plosion of some kind, which nearly demolished the car on which she was riding. The exact nature of the explosion the plaintiff alleges she is unable to state, but does allege that her injuries were caused by the negligence of the company and without any fault upon her part. She alleges that the company was negligent in not providing for a proper inspection of the cars, machinery, dynamos and apparatus in use by it; that the company was also negligent in not providing a proper inspection of the tracks upon which the cars were run; that the servants and employees of the company were negligent in not keeping a proper lookout for obstructions upon the track; further, that the company was negligent in not notifying the plaintiff of the dangers incident upon the riding upon the car at the time, also negligent in the appointment of incompetent servants, particularly the motorman in charge of the car upon which the plaintiff was riding; that the motorman was negligent in the management of its car; that he neglected to apply the brake at the proper time, of all of which the plaintiff had no knowledge. These allegations of negligence, considered independent of the peculiar conditions existing at the time, as further alleged in the petition, were in no sense sustained by the evidence.

Following these allegations, it is alleged that in the month of July, 1899, difference arose between the company and its employees, resulting in a strike by the employees, causing troubles and dangers incident to the same.

It is further averred in the petition that several other explosions had occurred in other parts of the city upon the defendant's track prior to the one which caused the injuries to the plaintiff, and that by reason of said explosions prior to the date of the plaintiff's injuries the defendant was aware and well knew that attempts were being made to place explosives of some kind or description, unknown to this plaintiff, upon the tracks of the defendant; that, notwithstanding this knowledge which the defendant had, it still continued to run and operate its cars and thereby invited the public to ride on said cars; that it took no measures or precautions to prevent such explosions or concussions; that it failed to patrol its track on which it ran its cars, either by persons on horseback or by men on bicycles or other-

wise, which it might easily have done; that it negligently failed to equip its cars in front of the forward wheels with brushes or other appliances which might have been placed thereon; that it failed utterly to take any precautions to discover whether explosives were placed upon its tracks or not; that it adopted no means to protect its track and protect the public who were traveling in its cars by direct and implied invitation; that the headlights upon its cars were placed upon the top of the car, and that the headlight upon the car in which the plaintiff was riding at the time she was injured was upon the top of the car; that said headlight was insufficiently furnished with an illuminant or light that would enable the motorman, who had charge of the car upon which this plaintiff was riding, to see ahead far enough safely to stop the car in case he saw anything upon the track, and that the defendant was guilty of negligence and careless in failing to supply or equip its said car with a proper headlight; and such a headlight as would enable the motorman operating the car to see whether any obstruction had been placed upon the track or not, the company well knowing, as this plaintiff alleges it did, that obstructions were being placed upon its tracks at that time.

"The plaintiff further says that the defendant employed no person on horses or on wheels, or on foot, to patrol said tracks and see that the same were free from obstructions, that is, the tracks on Wilson avenue; that it was guilty of recklessness, carelessness and negligence in not so doing, well knowing that obstructions and explosives were being placed on its tracks at that time, especially on said Wilson avenue; that instead of protecting its tracks or taking any measures to prevent explosion under its cars on said Wilson avenue, it published cards and interviews in the newspapers inviting the public to ride upon its cars and did say to the public that it was safe for the public so to do; that before the grievances hereinbefore set forth were committed, the president of the said defendant corporation, speaking for the defendant company, told the state board of arbitration, which had met in the city of Cleveland for the purpose of adjusting the difference between the defendant and its former employees, that 'The company fully appreciating the sincerity of your desire to bring about a readjustment with former employees, begs to say that the men who went out on Monday last, July 18, 1899, are not in the company's employ, and there is nothing to negotiate

about or arbitrate.' That it thereby carelessly and negligently assumed that the persons it had then in its employ were fully competent to operate, manage and run cars, and by said assumption publicly made, informed the public that the men who had been hired to take the place of its former employees were competent to care for, manage and run its cars, although the defendant knew, or ought to have known the facts to be otherwise.

"Plaintiff further says that the agents and servants of the defendant on said occasion were guilty of carelessness and negligence in this, that just prior to the happening of said accident said car was being negligently and carelessly run and operated at a high and dangerous rate of speed, and at such a rate of speed as rendered a proper and careful lookout by the motorman in charge of said car difficult; that is, at such a rate of speed as partially prevented a careful and proper lookout upon the tracks in front of said car; and that said agents and servants of the defendant in the management, conduct and control of said car and in the operation of the same, were guilty of carelessness and negligence upon said occasion and just prior thereto."

These allegations of negligence last quoted are connected with the allegations of the dangerous condition existing at the time, and the alleged acts of commission and omission on the part of the company are negligent acts, if at all, because of the alleged condition then existing in the city.

Issue was taken upon these allegations of the petition by answer.

Much evidence was produced upon the trial tending to sustain the claim of the respective parties. The trial consumed four weeks of time. There was no direct evidence of the size, nature or character of the explosives; much time was consumed in the examination of witnesses called as experts to establish such fact.

Numerous errors of the trial court are insisted upon as a ground for the reversal of this judgment. It will be noted that the explosive which caused these injuries was unlawfully placed upon the track by some miscreant for whose act the company was not responsible. The company, however, was charged with the duty of protecting its passengers from the dangers resulting from such act. It was not responsible for placing the explosive upon the track. Respecting this part of the case, the trial court said to the jury:

"As I have said, there had been a strike; the employees of the company had gone off; others had taken their places.  There had been some explosions of some kind of explosive on the tracks of this company; they had been numerous; I think thirty or forty, the evidence tends to show; a few of them had been dangerous, but had evidently been intended simply to frighten people and prevent them from traveling on the road.  It is claimed that the company had knowledge of this condition of things.  They were operating their road impliedly inviting the public to travel on it; that persons were traveling upon it; they were operating their road carrying passengers, and that the company did not take proper measures to protect its passengers from this impending danger for which they were not, in the first instance, responsible.  Now, that is the nature of this plaintiff's claims; that is the nature of this case.

Again, in the charge, he says:

"Did the company have reason on the 30th of August, 1899, to expect danger to its passengers on Wilson avenue, from explosives on its tracks?  If it did not have reason to expect such danger at such time, there can be no recovery in this case.  The burden is upon the plaintiff to prove by a preponderance of the evidence, that the company did then have reason to expect such danger, and if, upon consideration of all the evidence bearing upon this question, you do not find that it has been proved that the company had reason, at that time, to expect such danger, that will end your consideration of the case, and you should return a verdict for the defendant."

Again, it is stated:

"There is evidence tending to show that at this time about the full number of cars were being operated, and the public confidence had been restored to such degree that travel had increased to such extent as the evidence shows it had increased.

"Now, in view of these considerations; in the light of whatever else the evidence shows, bearing upon this question in view of whatever might, in the nature of the situation, reasonably be expected or not expected; what should this company have expected as to a recurrence of the dangerous explosions?

"If, upon full consideration of this question, you do not find it proved that the company had reason, at that time, to expect danger to its passengers from explosives placed on its tracks, you should return a verdict for the defendant, without further consideration.

"If, on the contrary, you find it proved that the company had reason at that time to expect such danger to its passengers, then you will inquire further, and determine whether it has been proved that the company was negligent in any of the respects charged in the petition."

The jury were thus instructed that the alleged negligent acts were not such unless the conditions existing at the time were of such a nature that the company had reason to expect damage to its cars and injury to its passengers from explosives, and therefore should have adopted extraordinary precautions to avoid such damages and injuries. The omission to employ by the company the agencies which it is alleged they omitted to employ became negligence only because of the fact of the dangers incident to the strike which the company was bound to guard against. If it be true that the conditions growing out of the strike were such that the company had reason to anticipate danger from explosives, then such omission may have been negligence on its part, but if the omission to employ such agencies can be characterized as negligence only when it is found that the conditions were such that the company had reason to anticipate danger from explosives, or by the exercise of due care should be charged with knowledge of such danger, then the court correctly charged the jury. We are of the opinion that a proper construction of the pleadings and proper application of the evidence to the issues fully justifies such charge and that there was no error in it.

Again, it is insisted that the jury were mislead by the charge of the court upon the subject of the degree of care which the defendant was bound to exercise toward its passengers, and attention is called to some expressions in the charge giving some support to this claim. The court said, among other things, upon this subject:

"The law imposes upon the carrier of passengers a high degree of care for their safety, the highest practicable degree of care—I am now speaking of passengers ordinarily—not in this particular instance—as to acts or omission of things under its control. A common carrier of passengers is required, by the law, to exercise the utmost care and diligence for their safety, and is responsible for injury resulting from the slightest neglect of such care. There is more or less danger from any means

of rapid transit, however careful the carrier may be, and whatever risk there is, when the carrier has been as careful as he ought to be, the passenger assumes.''

It is insisted by counsel for the plaintiff that here the jury were given to understand that the rule laid down applicable to the duties of common carriers did not apply to the case then on trial; but when the court charged the jury upon the responsibility of the defendant in this particular case, the true rule, we think, was stated.  The court said:

''A carrier or passenger is not liable for the act of an intervening independent agency.  But where there is a known impending danger from a source for which the carrier is not responsible, then the law imposes upon the carrier a degree of care in respect to such impending danger; but the degree of care in such case depends upon the condition and circumstances of the particular instance, varying with those conditions, and is not that absolute degree of care which I have stated the carrier owes to its passengers under ordinary conditions.''

Again the court say:

''On the 30th of August, 1899, this defendant had the right, and it owed the duty to the public to operate its several lines of street railway, and to carry such persons as chose to ride in its cars.  It was not obliged, and it is not claimed here that it was obliged to cease to operate its road.  This being so, you can plainly see that the degree of care which it could be required to exercise for the safety of its passengers must be consistent with the reasonable operation of its road; and this is the requirement of the law.  Under the circumstances of this case, the law required of this defendant company ·the exercise of the highest degree of care practicable for the safety of its passengers, in view of the existing and known conditions, consistent with the practical operation and management of its street railway system.  Failure to do this would be negligence on its part.''

More is said upon this subject in other parts of the charge and in comments upon the requests made, but we think the above fairly states the law applicable to this case.

Again, complaint is made that the trial court took from the consideration of the jury the alleged negligence of the motorman

in failing to keep a proper lookout. We have carefully read the record, and fail to find any evidence whatever tending to support said allegation. The same may be said of the failure of the motorman to stop the care by proper application of the brakes. The brakes were disabled by the effect of the concussion or explosion, and all was done that could be done after the explosion took place. And, generally, it may be said of the allegations of negligence, relied upon, that unless the company had reason to apprehend danger from explosions, no duty was imposed upon it to adopt extraordinary measures to guard against the danger from such explosions. In such case, a failure to patrol its tracks, or to equip its cars in front of the forward wheels with brushes to remove the explosives from the track, or to provide more efficient headlights than were in ordinary use, or to employ extraordinary vigilance to discover such explosives upon the track— its failure to do so in any of these respects would not be negligence on the part of the company unless it was found that it had reason to apprehend such dangers.

Again, it is said the plaintiff was not awarded a fair trial by reason of certain rulings of the court in the admission and exclusion of evidence, and comments made in the presence of the jury during the trial. The most serious objection made under this complaint is of the rulings and comment of the court as appears on page 385, and following of the record. The plaintiff sought to show by a witness the speed at which the car was going at the time of the accident. An objection was interposed by the defendant to the testimony offered. Under a recent holding of the circuit court sitting in Licking county, approved by the Supreme Court, this testimony was competent. The trial court commented very freely upon this decision and, among other things, said:

"I know the holding of the Circuit Court of Licking County is not the law, if I know anything about such things, and yet here is the affirmance of that judgment by the Supreme Court. If you want to take the chance, this witness may answer the question."

Plaintiff's counsel then said: "We take the chances." The law upon this particular subject had been settled by the decision

of the highest court of the state and, therefore, was the law of the forum in which this case was tried; and the evidence should either have been excluded, or permitted to go to the jury without the condemnation of the trial court.

Again, it is said the charge of the court to the jury was misleading and, therefore, erroneous. A considerable portion of the charge, it is true, deals with general propositions of law applicable to this class of cases, and it is possible that the jury would have been better aided in their consideration of the evidence of the case by a shorter and less learned charge. The case was a peculiar one and so out of the ordinary as to present many difficulties and to require careful discrimination of the trial court. We believe that the true theory of the case and the ground of responsibility of the defendant company to the plaintiff was adopted by the trial court and that that theory was so enforced upon the jury by the trial court that they could not have misunderstood the charge. We conclude that the correct result was reached; that the judgment is the only one that was authorized by the evidence and the law applicable to the facts, and that there is no error apparent upon this record for which the judgment should be reversed.

The decision is by a majority of the court only, Judge Marvin dissenting.

The judgment of the court of common pleas is affirmed.